UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   TERRENCE C. BELL                                      Case No. 13-14023

    Debtor.

NEW MEXICO DEPARTMENT
OF WORKFORCE SOLUTIONS

    Plaintiff,
v.                                                             Adv. No. 14-1028

TERRENCE C. BELL

    Defendant.

## MEMORANDUM OPINION

Before the Court is Plaintiff's adversary complaint against Debtor-Defendant. Plaintiff New Mexico Department of Workforce Solutions (the "Department") claims Defendant Terrence C. Bell fraudulently collected $2,420 in unemployment benefits while he was working full time. The Department seeks a determination that Mr. Bell's debt arising from such payments are nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Court tried the adversary proceeding on August 28, 2014. After considering the evidence and arguments presented at trial, the Court finds in favor of the Department and determines the debt to be nondischargeable under § 523(a)(2)(A).

FINDINGS OF FACT

The Department administers the unemployment insurance program for the State of New Mexico. It provides unemployment benefits to workers who meet certain eligibility requirements. Mr. Bell filed a claim for unemployment benefits on June 21, 2009. The Department directed him to review the unemployment application (the "Application") and the Unemployment Insurance Information Handbook (the "Handbook"), which contain policies and

information about the unemployment insurance process. The policies are aimed at helping claimants apply for and collect benefits to which they are entitled and ensuring claimants are not overpaid. The Application states that to be eligible for benefits, claimants must report their total gross wages for any work performed. *See* Exhibit 5. The Handbook also informs claimants of their obligation to report any earnings. It states:

> You are required to report any gross wages, cash, or anything of value that you earn in the week you are claiming benefits. Failure to report these earnings could result in an [o]verpayment or denial of [u]nemployment benefits.

*See* Exhibit 15, p. 15 005.

Mr. Bell received two types of overpayments from the Department. The first overpayment was the result of the Department's administrative error. Before Mr. Bell applied for unemployment benefits, his former partner had also applied and claimed their four children as dependents. To receive dependent benefits, she certified that she provided the majority of the children's support and that no other person was claiming them as dependents. She stopped receiving benefits (and claiming the children as dependents) in March 2009, which allowed Mr. Bell to then claim the children as his dependents in June 2009. At the time, Mr. Bell was permitted to receive dependent benefits for the children because no other parent was claiming them.

Sometime thereafter, Mr. Bell's former partner again began receiving unemployment benefits and again claimed the children as dependents. Mr. Bell continued to claim the children and receive dependent benefits, likely because he was unaware his former partner had re-enrolled. In July 2010, the Department discovered that for approximately 35 weeks, it had inadvertently paid $100 a week in dependent benefits to both Mr. Bell and his former partner. In the absence of evidence that a particular parent provides the majority of a child's support, the

2

Department's default policy is that the first parent to claim a child as a dependent has a superior entitlement to collect the dependent benefits. The Department therefore found that Mr. Bell's former partner was entitled to claim the children and that Mr. Bell was required to repay any dependent benefits received during the 35 week period. Mr. Bell had the right to rebut that finding by filing an appeal, where he could have argued the merits of who actually provided the majority of the children's support. However, Mr. Bell did not appeal the Department's determination or otherwise respond to the Department regarding the overpayment.

Mr. Bell was overpaid $3,500 as a result of the Department's administrative error, which will hereinafter be referred to as the "Dependent Overpayment." To recover the Dependent Overpayment, the Department garnished 50% of the unemployment benefits due to Mr. Bell in July, August, September, and November 2010. The Department also intercepted and collected a $225 state tax refund due to Mr. Bell on June 26, 2012 and applied it to the Dependent Overpayment. Of the $3,500 Dependent Overpayment, Mr. Bell has repaid $2,515.[1]

The second overpayment was the result of Mr. Bell's misrepresentations to the Department. Mr. Bell was employed full time at Sprint between December 8, 2009 and January 14, 2010. During that time Mr. Bell represented to the Department each week through online certifications that he was unemployed. The weekly certifications, which had to be completed before Mr. Bell could receive benefits, posed the following question: "Did you work for cash, wages, or anything of value during this week?" Mr. Bell answered "no" each time. Between the Application, the Handbook, and the certifications, it is clear Mr. Bell knew he was required to report his wages from Sprint but intentionally misrepresented his employment status in order to

---

[1] At one point Mr. Bell suggested the math does not add up to $2,515. However, the evidence demonstrates that amount is correct. *See, e.g.,* Exhibit 12, p. 12 003 - 12 005 (Department table showing the repayment amounts, which total $2,515); Exhibit 11, p. 11 001 (Response to request for admission where Mr. Bell admits he repaid $2,515 on account of the Department's administrative error).

3

collect unemployment benefits to which he was not entitled. As a result of Mr. Bell's misrepresentations, he collected $2,420 in unemployment benefits for the weeks ending on December 12, 2009 through January 16, 2010.

The Department discovered a discrepancy between the unemployment benefits paid to Mr. Bell and the wages reported by Sprint during a routine audit. On September 15, 2010, the Department sent Mr. Bell a letter informing him of the discrepancy and giving him 10 days to respond. *See* Exhibit 8. As of October 8, 2010, Mr. Bell had not responded or otherwise communicated with the Department regarding the overpayment. On that date, the Department therefore determined that Mr. Bell was overpaid $2,420 in unemployment benefits while he was working full time at Sprint and that he was required to repay that amount. Hereinafter, such amount will be referred to as the "Sprint Overpayment."

The Department addressed the Dependent Overpayment and the Sprint Overpayment as follows:

| Date | Action | Repayment Amount[2] |
|---|---|---|
| July 13, 2010 | The Department determined Mr. Bell must repay the Dependent Overpayment. | |
| July 30, 2010 | Claim offset - Dependent Overpayment[3] | $690 |
| August 1, 2010 | Claim offset - Dependent Overpayment | $230 |
| August 8, 2010 | Claim offset - Dependent Overpayment | $230 |
| August 15, 2010 | Claim offset - Dependent Overpayment | $230 |
| August 22, 2010 | Claim offset - Dependent Overpayment | $230 |

---

[2] The repayment amount refers to the amount the Department withheld from Mr. Bell's benefits. Mr. Bell did not voluntarily repay any money in connection with the Dependent Overpayment or the Sprint Overpayment.

[3] "Claim offset – Dependent Overpayment" means that the Department reduced Mr. Bell's unemployment benefits by a certain amount to recover the Dependent Overpayment.

4

| August 29, 2010 | Claim offset - Dependent Overpayment | $230 |
| --- | --- | --- |
| September 27, 2010 | Claim offset - Dependent Overpayment | $180 |
| October 8, 2010 | The Department determined Mr. Bell must repay the Sprint Overpayment. | None |
| November 4, 2010 | Claim offset - Dependent Overpayment | $270 |
| June 26, 2012 | The Department intercepts and collects Mr. Bell's state tax refund and applies it to the Dependent Overpayment. | $225 |
| | **Total amount of Dependent Overpayment:** | **$3,500** |
| | **Amount repaid:** | **$2,515** |
| | **Total amount of Sprint Overpayment:** | **$2,420** |
| | **Amount repaid:** | **$ 0** |

As the table demonstrates, Mr. Bell repaid most of the Dependent Overpayment before the Department assessed the Sprint Overpayment. To the extent the Department garnished any of Mr. Bell's benefits after it discovered the Sprint Overpayment, it applied the funds to the Dependent Overpayment first since that debt was older. No funds were applied to the Sprint Overpayment because the Dependent Overpayment was never repaid in full. The full balance of the Sprint Overpayment therefore remains due.

DISCUSSION

The Department asserts the Sprint Overpayment is nondischargeable under § 523(a)(2)(A) because it was procured by a false representation. Section 523(a)(2)(A) excepts from discharge debts for "money, property, services, or an extension, or renewal of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." A creditor seeking to except its debt from discharge under § 523(a)(2)(A) based on a false representation must prove, by a preponderance of the evidence:

5

> The debtor made a false representation;
> [T]he debtor made the representation with the intent to deceive the creditor;
> [T]he creditor relied on the representation;
> [T]he creditor's reliance was [justifiable]; and
> [T]he debtor's representation caused the creditor to sustain a loss.

*Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 789 (10th Cir.2009) (quoting *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir.1996). *See also Field v. Mans*, 516 U.S. 59, 60 (1995) (changing the standard of reliance under 11 U.S.C. § 523(a)(2)(A) from "reasonable" to "justifiable").

"False representations are 'representations knowingly and fraudulently made that give rise to the debt.'" *In re Osborne,* 2014 WL 5527883, *3 (Bankr. D.N.M. 2014) (quoting *In re Lewis*, 271 B.R. 877, 885 (10th Cir. BAP 2002)). "The fraudulent intent element of § 523(a)(2)(A) need not be shown by direct evidence, but may be inferred from the totality of the circumstances." *In re Carlson,* 2008 WL 8677441, *2 (10th Cir. 2008) (quoting *In re Davis*, 246 B.R. 646, 652 (10th Cir. BAP 2000)). *See also Young,* 91 F.3d at 1375 ("The second element of § 523(a)(2)(A), the debtor's intent to deceive the creditor in making false representations to the creditor, may be inferred from the totality of the circumstances.") (internal quotations omitted).

A number of courts have held that certifying for unemployment benefits while working full time renders the resulting overpayment nondischargeable under § 523(a)(2)(A), provided fraudulent intent is established. *See In re Searle,* 2014 WL 1407308, *5-6 (Bankr. D.N.H. 2014) (finding that the unemployment benefits paid to the debtor while she was employed full time were nondischargeable where she completed an online certification each week stating that she did not receive any wages or other compensation); *In re Sanderson,* 509 B.R. 206, 210-211 (Bankr. W.D.Wis. 2014) (finding that "the debt owed to the Department representing the actual amount of the overpaid unemployment benefits and accrued interest should be excepted from

6

discharge under section 523(a)(2)(A)" where the debtor continued to accept unemployment benefits after he lost eligibility); *In re Platt,* 2014 WL 457739 (Bankr. D.Neb. 2014) (concluding that the overpayment of unemployment benefits should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A)).

The Court agrees that collecting unemployment benefits while working full time can constitute fraud, and finds that in this case all of the elements of § 523(a)(2)(A) are met. Mr. Bell made false representations to the Department by certifying that he was unemployed when, in fact, he was working full time at Sprint.[4] The Department's requirement that he click "yes" or "no" in response to the question "did you work for cash, wages, or anything of value during this week?" permits an inference that: (1) he understood the reporting requirement; and (2) he intended to deceive the Department. Even if Mr. Bell did not read the Handbook or the Application, he certainly read and answered that question each week because it was a prerequisite for receiving benefits. Mr. Bell therefore intended to deceive the Department by making the false certifications. The fact that the Department continued to pay unemployment benefits demonstrates that it actually relied on Mr. Bell's misrepresentations. Such reliance was justifiable because the Department had no reason to know he was misrepresenting his income until it conducted a routine audit several months later and discovered the discrepancies.

As well as the Court can discern, Mr. Bell argues the Department did not suffer damages as a result of the Sprint Overpayment for two reasons. First, Mr. Bell seems to suggest he was not required to repay the Dependent Overpayment because the Department did not investigate whether he actually provided the majority of the support for the children. According to Mr. Bell,

---

[4] Mr. Bell's protestation that he contacted Tina Martinez, an advanced investigator in the Department's benefit payment control unit, in late 2009 or early 2010 to report the overpayment is not credible. Ms. Martinez testified that she had not communicated with Mr. Bell on or before October 8, 2010 and that she had no recollection of speaking with him after that date. The Court finds Ms. Martinez's testimony to be credible and accepts her testimony as true.

7

the $2,420 Sprint Overpayment should therefore be offset by the $2,515 he already repaid in connection with the Dependent Overpayment.

This argument is unavailing. Offset is an affirmative defense upon which Mr. Bell bears the burden of proof. *See U.S. v. Renda Marine, Inc.,* 667 F.3d 651, 659 (5th Cir. 2012) (noting that "offset is an affirmative defense, … such that it is [defendant's] burden to establish beyond peradventure all of the essential elements of the defense") (internal quotations omitted).[5] The Department presented testimony that it determined Mr. Bell's former partner was entitled to claim the dependent benefits and that Mr. Bell was required to repay the Dependent Overpayment. Mr. Bell presented virtually no evidence to contravene this testimony, aside from questioning the Department's business analyst about the Department's investigative process. Mr. Bell did not appeal the Department's determination. Mr. Bell has therefore not established the Dependent Overpayment was invalid such that he is entitled to an offset.

Alternatively, Mr. Bell argues more generally that even if the Department had a valid claim for the Dependent Overpayment, the Department should have applied the garnished funds ($2,515) to the Sprint Overpayment rather than the Dependent Overpayment. He suggests the Department knew about the fraud first but elected to apply the funds to the Dependent Overpayment, presumably to prevent him from discharging the Sprint Overpayment.

Based on the evidence, the Court disagrees. The Department assessed the Dependent Overpayment in July 2010. The majority of the funds ($2,020) were garnished before the Department made any determination about the Sprint Overpayment, which occurred on October

---

[5] *See also Fox ex rel. Fox v. Barnes,* 2013 WL 2111816 at * 10 (N.D. Ill. 2013) (observing that offset is an affirmative defense upon which the defendant bears the burden of proof); *Aristocrat Leisure Ltd v. Deutsche Bank Trust Co. Americas,* 727 F.Supp.2d 256, 290 (S.D.N.Y. 2010) (collecting cases, the majority of which hold that set-offs, offsets, recoupments, or credits are affirmative defenses); 27 Federal Procedure, Lawyers Edition § 62:85 (2014) ("A claim for offset in federal court is an affirmative defense.") *Cf Emerson v. Kansas City Southern Ry. Co.,* 503 F.3d 1126, 1133-1134 (10th Cir. 2007) (noting that the defendant bears the burden of proof on an affirmative defense).

8, 2010. The Department garnished $495 after that date, but nothing prevented it from applying the funds to the Dependent Overpayment, which accrued first. Unless a statute or agreement provides otherwise, creditors generally apply payments to older debts before newer ones. There is no evidence the Department engaged in misconduct or otherwise manipulated Mr. Bell's account so that the unpaid balance of his debt was nondischargeable in bankruptcy. Although the balance of the Dependent Overpayment remains unpaid, the Department is only seeking to recover the amount procured by fraud, which is $2,420.

Having rejected Mr. Bell's arguments that the Department suffered no damages with respect to the Sprint Overpayment because he repaid a portion of the Dependent Overpayment, the Court concludes the Sprint Overpayment was procured by false representations. The Sprint Overpayment is therefore nondischargeable under § 523(a)(2)(A).

## CONCLUSION

Based on the foregoing, Mr. Bell's debt to the Department in connection with the Sprint Overpayment ($2,420) is nondischargeable under § 523(a)(2)(A). The Court will enter a separate judgment consistent with this memorandum opinion.

_/s/ Robert H. Jacobvitz_
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on: December 2, 2014
COPY TO:

Terrence C Bell
10717 Apache Ave NE
Albuquerque, NM 87112

Elizabeth A. Garcia
PO Box 1928 Legal Section
Albuquerque, NM 87103